1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    DAVID BARNETT, et al.,                    Case No.  18-cv-01383-JD

8                   Plaintiffs,

                                               **FINDINGS OF FACT AND**
9            v.                                **CONCLUSIONS OF LAW**

10   CITY OF SAN JOSE,

11                  Defendant.

12

13          Plaintiffs are firefighters employed by defendant City of San Jose (City).  They sued the

14   City for unpaid overtime they allege the City owes them under the Fair Labor Standards Act

15   (FLSA), Pub. L. No. 75-718, 52 Stat. 1060 (1938) (codified as amended at 29 U.S.C. §§ 201 *et*

16   *seq.*).  *See generally* Dkt. No. 46 (SAC).  In a nutshell, the FLSA establishes, among other things,

17   a minimum amount that firefighters must be compensated for overtime work.  The City pays the

18   firefighters pursuant to a collective bargaining agreement.  To ensure compliance with the FLSA,

19   the City compares at the end of each relevant period the amount paid under the agreement to the

20   amount it is obligated to pay under the statute.  If the amount paid per the agreement is below the

21   amount due under the FLSA, the City pays the firefighter the difference; if the amount per the

22   agreement is greater, the City takes no further action.  Plaintiffs say the City's approach

23   shortchanged them and paid less than the FLSA required.

24          Although this may sound relatively simple, the case has been beset by tortuous (and on

25   occasion torturous) immersions into overtime pay calculations, spreadsheets, endless numerical

26   tables, and the like.  At multiple times in the litigation, even the lawyers for the parties seemed

27   flummoxed by the math and unable to explain in plain and simple terms what the actual

28   disagreement was between the firefighters and the City.  Some, but not all, of the confusion may

United States District Court
Northern District of California

United States District Court
Northern District of California

1  be attributable to the fact that, as many courts have noted, determining FLSA pay rates can be a

2  perplexing exercise.

3      After unsuccessful attempts at resolving the dispute in motion hearings, the Court

4  concluded that a bench trial with witnesses and evidence was warranted.  Dkt. Nos. 107, 127.

5  Unfortunately, the parties chose to treat the bench trial as another motion hearing and did not

6  proffer a single witness who might have brough clarity to the case.  Dkt. No. 136.  The trial

7  consisted of attorney argument and admission of the parties' stipulations of fact and documents

8  into the record, most of which were again comprised of masses of numbers without explanatory

9  context.  *See* Dkt. Nos. 136, 140.

10     The Court advised the parties that the bench trial decision would be based solely on the

11 evidence admitted at trial.  Dkt. No. 137.  The ensuing findings of fact and conclusions of law are

12 based on the trial evidence, the parties' trial briefs, and post-trial submissions.  *See* Dkt. Nos. 83,

13 90, 101, 115-16, 136, 140, 144-45.

14     An almost-identical lawsuit was previously brought in this district by different San Jose

15 firefighters against the City.  These plaintiffs were part of that case until it was decertified, at

16 which point they decided to proceed separately.  Dkt. No. 46 ¶ 9.  In that case, *Wallace v. City of*

17 *San Jose*, summary judgment was entered for the City, and the Ninth Circuit affirmed.  Here, the

18 City did not pursue issue preclusion in any form.  The result here is different.  Plaintiffs have met

19 their burden of establishing that the City underpaid them during certain work periods and so

20 violated the FLSA.

21                          **FINDINGS OF FACT**

22 **I.      THE CITY'S METHOD OF PAYING ITS FIREFIGHTERS**

23     1.      The Memorandum of Agreement (MOA) (*i.e.*, the collective bargaining agreement)

24 between the City and the firefighters' union memorializes the terms and conditions of firefighter

25 employment, including compensation, for fiscal years July 1, 2014, and June 30, 2018.  Dkt.

26 No. 136, Stipulation of Undisputed Facts (SUF) No. 1; Dkt No. 140-11 (Trial Exh. 857) (MOA).

27

28

                                        2

United States District Court
Northern District of California

2.      Under the MOA, firefighters who are assigned to 24-hour work shifts (which includes most of the plaintiffs here) are required to work at least an average of 56 scheduled hours per week.  SUF No. 2; MOA § 14.3.

3.      The firefighters are paid biweekly, meaning every two weeks (the pay period or MOA pay period).  SUF No. 3.  There are various firefighter classifications, and the "MOA sets a 'salary schedule' providing for biweekly salary payments" for each firefighter classification based on 112 hours of work.  SUF Nos. 5, 6; MOA § 30.1 & Exhibit I thereto.

4.      Plaintiffs are salaried employees for purposes of the FLSA.  The City pays plaintiffs their set salaries "regardless of the number of [scheduled] hours employees actually work," an arrangement negotiated by the union and City to "accommodate the firefighters' request for consistency and predictability in their pay checks."  SUF No. 5.  The payment schedule jointly submitted into evidence with the MOA (MOA Exhibit I) is entitled "2014-2018 IAFF Salary Schedule."  MOA Exhibit I.  Plaintiffs' paystubs indicate that their biweekly "pay rate" is pegged to an unchanging 112 hour "Quantity" instead of a variable number of "Hours."  Dkt. Nos. 140-3 at ECF 2-3 (Trial Exh. 142); 140-4 at ECF 2-3 (Trial Exh. 143).

5.      In addition to the amounts identified in the salary schedule, the City also pays firefighters "premium" or "add-on" payments.  SUF No. 10.  The add-on payments are additional rewards or incentives for firefighters with certain skills, for example emergency medical training or language skills.  *See generally* MOA § 5.  Although disbursed as lump-sum payments at the end of each pay period, a number of these add-on payments are essentially salary enhancements.

6.      The MOA also provides for premium pay for overtime hours, which will be denoted here as "contractual overtime."  Firefighters assigned to a 56-hour-per-week schedule who work more than 24 hours at a time earn 1.5 times (1.5x) their "base hourly rate" for the extra hours worked.  MOA § 14.5; SUF NO. 7.

7.      The base hourly rate is based solely on the amounts set forth in the salary schedule, and so is exclusive of any add-on payments.  The base hourly rate may be calculated by two mathematically equivalent ways: (1) dividing the firefighter's biweekly salary by the set number

3

1    of 112; or (2) doubling the firefighter's biweekly salary and dividing that by the set number of

2    224.  SUF No. 5; MOA Exhibit I.

3        8.      Plaintiffs are eligible for contractual overtime for working extra unscheduled hours,

4    which are hours "they work outside their regularly[ ]scheduled work shifts."  SUF No. 14.

5        9.      Consequently, contractual overtime is due even if the firefighter worked less than

6    112 scheduled hours in a two-week MOA pay period.  SUF No. 14.  This can happen when a

7    firefighter takes vacation or sick time at one point in the pay period (and so works less than 112

8    scheduled hours) but ends up working extra non-scheduled hours at another point in the pay

9    period.  MOA § 14.9; SUF Nos. 8, 14.

10       10.     The FLSA guarantees premium pay to plaintiffs when they work more than 24

11   hours at a time or more than 212 hours in a 28-day work period (FLSA work period or work

12   period).  For clarity, the Court refers to this overtime pay under the statute as "FLSA overtime."

13   FLSA overtime differs from contractual overtime in two relevant respects: (1) FLSA overtime

14   only kicks in when the number of hours actually worked exceeds 212 hours in a given work period

15   (without considering vacation or sick time); (2) FLSA overtime is paid at a higher rate than

16   contractual overtime because it includes both the biweekly salary and certain add-on payments (to

17   be discussed in greater detail later).  SUF No. 10.  Put more plainly, contractual overtime is paid

18   more often but at a lower rate than FLSA overtime.

19       11.     The City recognizes that FLSA overtime differs from contractual overtime.  It uses

20   a software program called PeopleSoft to check its compliance with the statute.  Dkt. No. 140-1

21   (Trial Exh. 104) at Interrogatory Response No. 1.

22       12.     At the end of each 28-day FLSA work period, which is comprised of two MOA pay

23   periods, PeopleSoft calculates the amount owed to a firefighter for the two pay periods under the

24   MOA.  If the firefighter did not work over 212 hours in the 28-day work period, the program

25   makes no further calculations and adjustments.  Trial Exh. 104 at Interrogatory Response No. 1.

26   The plaintiffs have no problem with this practice.

27

28

United States District Court
Northern District of California

4

United States District Court
Northern District of California

13.     If the firefighter worked over 212 hours in the work period, the program determines "the number of FLSA overtime hours the employee worked in the 28-day work period and the amount of overtime due" under the FLSA.  Trial Exh. 104 at Interrogatory Response No. 1.

14.     The City calculates FLSA overtime by ascertaining the "FLSA regular rate," which is different from the above-mentioned base hourly rate.  SUF No. 16; Trial Exh. 104 at Interrogatory Response No. 1.

15.     The City's practice during the relevant time periods was to calculate the FLSA regular rate by "dividing the amount paid for [add-on payments] by a fixed divisor of 224 and adding that to the employee's [base hourly rate]."  Trial Exh. 104 at Interrogatory Response No. 1. The fixed divisor of 224 in that formula represents the total number of scheduled hours in a 28-day work period (*i.e.*, a firefighter's weekly 56 scheduled hours multiplied by four).  The City would multiply the resultant rate by the number of hours worked over the statutory overtime threshold to determine how much it believed a firefighter was due under the FLSA.

16.     "The result of that calculation is [then] compared to the amount paid to the employee under the MOA.  If the amount the City has paid pursuant to the MOA is less than the FLSA amount calculated, then the City pays the difference through an 'FLSA overtime adjustment' to the employee's paycheck at the end of the 28-day work period."  SUF No. 19.

17.     "The City's position is that, in determining whether it has paid at least what is required by the FLSA, it may consider all contractual overtime paid at 1.5x, regardless of whether that overtime was paid for hours worked under 212 hours per work period or over 212 hours per work period, and that was the City's actual practice at all times relevant to this litigation."  SUF No. 21.

18.     The problem plaintiffs have with the City's methodology arises only in a specific circumstance: when a firefighter works less than 212 scheduled hours in a work period (because, for example, she took vacation time) but ends up working a lot of extra non-scheduled hours that push her total number of hours in the work period to over 212 hours.  *See* Dkt. No. 138 (Trial Transcript) at 43:13-45:8.

United States District Court
Northern District of California

## II.    PLAINTIFF BARNETT

1.    The parties offered plaintiff David R. Barnett's 28-day work period from July 16 to August 12, 2017, as a "bellwether" to show at trial how plaintiffs are paid and how the asserted deficiencies in the City's calculation method affects their pay.  Dkt. No. 116 at 3 n.3; *see* Dkt. No. 140-6 (Trial Exh. 243); Trial Exh. 142.

2.    Barnett's biweekly salary was $6,259.20.  Trial Exhs. 142, 243.

3.    In the first pay period, Barnett worked 96 scheduled hours and 175.5 extra non-scheduled hours, the latter of which were eligible for contractual overtime.  He earned a full $6,259.20 biweekly salary, $14,711.91 in contractual overtime, and $629.21 from four types of add-on pay (Anti-Terrorism Training Pay, Education & Training Pay, Emergency Medical Technician pay, and Holiday In-Lieu Pay).  Barnett also received a $35 cell-phone stipend and a $20.62 uniform allowance.  Trial Exh. 142 at ECF 2.

4.    In the second pay period, Barnett worked 96 scheduled hours and 41.5 extra non-scheduled hours, and he took 24 hours of vacation time.  He earned his full $6,259.20 biweekly salary, $3,478.88 in contractual overtime, and $629.21 from the same four types of add-on pay.  Barnett also received a $20.62 uniform allowance.  Trial Exh. 142 at ECF 3.

5.    Barnett worked a total of 409 hours over the whole work period, of which 192 were scheduled hours (exclusive of vacation time) and 217 were extra unscheduled hours.  Twenty of those extra unscheduled hours were eligible only for contractual overtime, because Barnett had not yet worked 212 total hours in the work period.  For those hours, Barnett was eligible to receive 1.5x his base hourly rate.  197 of those extra non-scheduled hours were eligible for FLSA overtime because Barnett had exceeded the 212-hour threshold.  For these hours, Barnett was entitled to receive the higher FLSA overtime rate.  Trial Exh. 142 at ECF 2-3.

6.    Barnett did not receive an "FLSA overtime adjustment" for this 28-day work period.  Trial Exh. 243.  Barnett grossed $31,967.61 during this work period.  Dkt. Nos. 140-12 (Trial Exh. 859); 140-13 (Trial Exh. 860); SUF No. 11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSIONS OF LAW

### I.       STATUTORY FRAMEWORK

"One of the principal purposes of the FLSA is to ensure that employees are provided appropriate compensation for *all* hours worked." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 913 (9th Cir. 2004) (emphasis in original).  To that end, the FLSA entitles these plaintiffs to "compensation . . . at a rate not less than one and one-half times the regular rate at which [they are] employed" for hours worked in excess of 212 hours per 28-day work period.  29 U.S.C. §§ 207(a), (k).

For "employees engaged in fire protection activities who have a work period of at least 7 but less than 28 consecutive days, no overtime compensation is required . . . until the number of hours worked" exceeds 212 hours.  29 C.F.R. § 553.230(a); *see* 29 U.S.C. § 207(k).  "In other words, [the City is] required to compensate [firefighters] for time in excess of [212 hours per 28-day work period] with overtime compensation, which is paid at a rate of one and one-half times the [firefighters'] regular rate of pay." *Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 330 (3d Cir. 2016).  In this way, the FLSA "guarantee[s] minimum overtime compensation" for each hour of overtime worked. *Siegmund v. Cnty. of Orange*, 461 Fed. App'x 639, 641 (9th Cir. 2011) (unpublished) (citing *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 799 (9th Cir. 2010)).

It is well established that "[t]he first step in determining FLSA overtime liability is to calculate the [FLSA] regular rate of pay." *Wallace v. City of San Jose*, 799 Fed. App'x 477, 479-80 (9th Cir. 2020) (unpublished) (citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)).  The FLSA provides that the regular rate "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee" except for specifically delineated exceptions.  29 U.S.C. § 207(e).  The FLSA regular rate is "the hourly rate *actually* paid the employee for the normal, non-overtime workweek for which he is employed." *Brunozzi v. Cable Comms., Inc.*, 851 F.3d 990, 995-96 (9th Cir. 2017) (emphasis added) (quoting *Walling*, 325 U.S. at 419).  The Supreme Court of the United States has made it clear that the FLSA regular rate "must reflect all payments which the parties have agreed shall be received regularly during the

7

workweek . . . . It is not an arbitrary label chosen by the parties; it is an actual fact." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948). In other words, the FLSA regular rate "must be discerned from what actually happens under the governing employment contract." *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003).

With the FLSA regular rate in hand, the statute provides that employers must pay employees in an amount equal to 1.5x the FLSA regular rate for each hour worked once the employee works above and beyond the FLSA overtime threshold -- in this case, 212 hours in a given 28-day work period. *See* 29 U.S.C. §§ 207(a), (k). The FLSA excludes various forms of remuneration from inclusion in the FLSA regular rate calculation, *see id.* § 207(e), while also providing that "sums excluded from the regular rate pursuant to subsection (e) shall *not* be creditable toward . . . overtime compensation required under this section," *id.* § 207(h)(1) (emphasis added). The only exception to this bar is that "[e]xtra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section." *Id.* § 207(h)(2). In effect, the FLSA establishes a minimum of overtime pay due to employees that must be paid independent of any additional remuneration for which the parties bargain outside the limited categories of "[e]xtra compensation" described in § 207(e)(5)-(7).

Consequently, "[i]f an employee's actual pay exceeds what the FLSA would require, an employer has no additional FLSA liability." *Wallace*, 799 Fed. App'x at 479 (citing 29 U.S.C. § 216(b)). But an employer may not claim that other monies owed to an employee compensate for overtime hours because "employers [must] pay employees for all hours worked." *Smiley*, 839 F.3d at 330. As our circuit court has aptly stated: "Crediting money already due to an employee for some other reason against the wage he is owed is not paying that employee compensation to which he is entitled by statue. It is, instead, false and deceptive 'creative' bookkeeping that, if tolerated, would frustrate the goals and purposes of the FLSA." *Ballaris*, 370 F.3d at 914.

"In a suit brought under the FLSA, the employee has the burden of proving that the employee was not properly compensated for the work performed." *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998).

8

## II.    THE PROPER DIVISOR FOR CALCULATING THE FLSA REGULAR RATE

Plaintiffs contend the City violated the FLSA because, in certain work periods, the City over-credited the contractual overtime paid for extra unscheduled hours worked below the FLSA overtime threshold. *See, e.g.*, SAC ¶ 10; Dkt. No. 116 (Plaintiffs' Supp. Tr. Br.) at 1.

The City's practice for calculating its firefighters' FLSA reasonable rate is to "divid[e] the amount paid for [add-on payments] by a fixed divisor of 224 and add[] that to the employee's base [hourly] rate." Trial Exh. 104 at Interrogatory Response No. 1. Throughout the litigation, the City has maintained that practice of using 224 as a set divisor is an act of grace "more favorable to employees" because the FLSA only requires dividing the add-on payments by the hours *actually worked* and adding that to the employee's base hourly rate. *See, e.g.*, Dkt. No. 101 (City's Tr. Br. re Legal Issues) at 8-10. If the firefighters were paid a sum pursuant to the MOA for overtime labor that was greater than that which the FLSA required, there is no statutory violation. *See Wallace*, 799 Fed. App'x at 479 (citing 29 U.S.C. § 216(b)). The City maintains it did just that by using a more favorable divisor. *See* City's Tr. Br. re Legal Issues at 8. Plaintiffs disagree on the sole ground that the proper divisor on this record is 224. *See* Plaintiffs' Supp. Tr. Br. at 8; Trial Tr. at 70:7-72:1. If the divisor is indeed the number of hours actually worked instead of 224, plaintiffs have not advanced any non-speculative ground for concluding that the City underpaid them in certain work periods.

The Supreme Court and other federal courts have recognized that properly determining the FLSA regular rate is "perplexing," *Bay Ridge Operating Co.*, 334 U.S. at 448, and "an often tricky calculation," *Hills v. Entergy Operations, Inc.*, 866 F.3d 610, 614 (5th Cir. 2017). Because plaintiffs here are not paid by means of an hourly wage, it is necessary to ascertain "all payments which the parties have agreed shall be received regularly during the workweek" and convert that into an hourly rate. *Bay Ridge Operating Co.*, 334 U.S. at 461; *see* 29 C.F.R. § 778.109 ("The 'regular rate' under the Act is a rate per hour. The Act does not require employers to compensate employees on an hourly rate basis. . . . it is [then] necessary to compute the regularly hourly rate of such employees during each workweek.").

1    The record demonstrates that the biweekly salary paid pursuant to the salary schedule falls

2    into the category of payments the parties "have agreed shall be received regularly during the

3    workweek." *Bay Ridge Operating Co.*, 334 U.S. at 461. But plaintiffs' FLSA regular rate is not

4    limited to their biweekly salaries. The various add-on payments at issue in this litigation should

5    also be included. *See, e.g.*, *O'Brien*, 350 F.3d at 294 ("[T]he regular rate cannot be stipulated by

6    the parties.").

7    The relevant add-on payments include "Anti-Terrorism Pay," "Emergency Medical

8    Technician" pay, "Paramedics" pay, "Bilingual Premium Pay," and "Holiday In-Lieu Pay."[1]  *See*

9    MOA §§ 5, 24; Trial Exh. 142 at ECF 2-3. These add-on payments are regularly paid to the

10   firefighters in connection with their usual scheduled hours, are based on the biweekly salary

11   schedule, and are not tied to contractual or FLSA overtime. *See* MOA §§ 5, 24. The payments do

12   not resemble the categories of remuneration statutorily excluded from the regular rate. *See* 29

13   U.S.C. § 207(e). The MOA provides most of these add-on payments to compensate firefighters

14   for skills or training in specialized areas. *See* MOA § 5. The Holiday In-Lieu Pay appears to be a

15   sort of premium for having to work unfavorable hours that overlap with a holiday (like paying

16   employees slightly more for working graveyard shifts). *See* MOA § 24.2; 29 C.F.R. § 778.207

17   ("The Act requires the inclusion in the regular rate of such extra premiums as nightshift

18   differentials."). Other courts have recognized analogous add-on payments to be properly

19   includable in the FLSA regular rate, and the Court sees no basis for disagreeing. *See, e.g.*, *Bay*

20   *Ridge Operating Co.*, 334 U.S. at 467-68; *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1305-

21   06, 1311-12 (10th Cir. 2011); *O'Brien*, 350 F.3d at 294-97. At heart, the add-on payments are

22   salary enhancements intended to compensate or incentivize skilled or valuable firefighters while

23   keeping each firefighter classification in lockstep on the salary chart.

24

25   _____

26   [1] Taking plaintiff Barnett as an example, he also was paid a uniform allowance and cellular phone
     stipend. Trial Exh. 142 at ECF 2. Neither party contends that either payment is relevant for FLSA
27   purposes, and the Court agrees, as both appear to be properly excludable from the reasonable rate
     as "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the
28   furtherance of his employer's interests and properly reimbursable by the employer." 29 U.S.C.
     § 207(e)(2).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Consequently, it follows that plaintiffs are correct that the proper divisor for arriving at the

2    FLSA regular rate is the fixed number of scheduled hours, meaning the FLSA regular rate is the

3    base hourly rate + (total add-on payments for the work period / 224), where the base hourly rate is

4    the biweekly salary divided by 112.[2]  The Department of Labor (DOL) publishes non-binding

5    guidance in the Code of Federal Regulations that is frequently cited with approval and relied on by

6    the federal courts in applying the FLSA's overtime provisions.  *See, e.g.*, *Hills*, 866 F.3d at 614;

7    *Smiley*, 839 F.3d at 330; *Aaron v. City of Wichita*, 54 F.3d 652, 655 (10th Cir. 1995).  In the case

8    of salaried employees, which includes plaintiffs, the regulations explain that "the regular hourly

9    rate of pay, on which time and a half must be paid, is computed by dividing the salary by the

10   number of hours *which the salary is intended to compensate*."  29 C.F.R. § 778.113(a) (emphasis

11   added).  Plaintiffs are scheduled for 56 hours per week and are compensated on a biweekly basis.

12   The number of hours their biweekly salary is intended to compensate is 112, and so the proper

13   divisor for the biweekly salary and the add-on payments (which, as discussed above, are just

14   salary enhancements) is either 112 or 224, depending on how the numerator is defined.  *See supra*

15   note 2; *see also Hills*, 866 F.3d at 614; *Aaron*, 54 F.3d at 655 ("The bi-weekly salaries found in

16   the MOA were intended to cover 112 hours of work for each pay period.  Therefore, the regular

17   rate consisted of the MOA-designated bi-weekly salary divided by 112."); *cf. Brennan v. Valley*

18   *Towing Co., Inc.*, 515 F.2d 100, 104-05 (9th Cir. 1975).

19   The City contests this conclusion mainly on the ground that plaintiffs are hourly and not

20   salaried employees.  For this theory, the City depends primarily on *Abshire v. County of Kern*, 908

21   F.2d 483 (9th Cir. 1990), and DOL regulations defining the phrase "salary basis," 29 C.F.R.

22   § 541.602.

23   Neither citation carries the day for the City.  To start, *Abshire* was abrogated by the

24   Supreme Court's ruling in *Auer v. Robbins*, 519 U.S. 452 (1997).  *See Childers v. City of Eugene*,

---

[2] The method for determining plaintiffs' FLSA regular rate can be formulated in several mathematically equivalent ways.  For instance, the base hourly rate can be calculated with the following equations: (a) biweekly salary / 112; (b) (biweekly salary x 2) / 224; (c) ((biweekly salary x 26) / 52) / 56.  As for the add-on payments, one can either take the total of relevant add-on payments for the work period and divide that by 224 or just the add-on payments for one MOA pay period and divide that 112.

1    120 F.3d 944, 947 (9th Cir. 1997) ("*Auer* therefore implicitly overrules *Abshire*.").  So even if the

2    rule articulated in *Auer* were applicable, the City adduced zero evidence that plaintiffs are subject

3    to deductions in pay "as a practical matter."  519 U.S. at 461.

4    　　　In addition, § 541.602 defines "salary basis" for regulations relating to *exemptions* from

5    the FLSA.  *See* 29 C.F.R. §§ 541.100-300; *see also id.* § 541.602 ("An employee will be

6    considered to be paid on a 'salary basis *within the meaning of this part* . . .'" (emphasis added)).[3]

7    The City offers no reason why the definition of the phrase "salary basis," which by the

8    regulations' own terms is specific to the § 541 regulations serving a different purpose from the

9    regulations providing guidance on regular-rate calculations, should be transplanted into § 778.  It

10   bears mention that the plain text of §§ 778.113 does not recurringly use the phrase "salary basis"

11   in the way the § 541 regulations do, thereby undercutting the notion that it implicitly means to

12   import the phrase's term-of-art meaning from elsewhere.  The City also appears to concede that a

13   fixed divisor of 112 is proper for calculating the base hourly rate under the FLSA but still says that

14   the add-on payments should have a variable divisor.  *See* City's Tr. Br. re Legal Issues at 10.  To

15   contend that the firefighters simply aren't salaried is in tension with the acknowledgment that at

16   least part of the FLSA reasonable rate should have a fixed divisor.

17   　　　The City says that this asymmetry is of no moment and that this case is on all-fours with

18   the Tenth Circuit's ruling in *Chavez v. City of Albuquerque*.  There, the Tenth Circuit dealt with,

19   *inter alia*, a FLSA dispute between firefighters and the City of Albuquerque (Albuquerque), which

20   employed a similar method for calculating the FLSA regular rate.  *See* 630 F.3d at 1306 ("[T]he

21   City multiplies the total hours worked by the [base hourly] rate and adds the add-on payments.

22   This sum is divided by the total number of hours worked, and the quotient is the [FLSA] regular

23   rate.").  The collective bargaining agreement in that case set forth a base hourly rate and included

24   various add-on payments paid in lump sums on a biweekly basis.  *Id.* at 1305.

25

26

27   ─────────────────────
     [3] The Court notes the regulations state that firefighters are not subject to the statutory exemptions
28   from the FLSA for reasons that pertain to the nature of their duties, not the structure of their pay.
     *See* 29 C.F.R. § 541.3(b).

12

United States District Court
Northern District of California

Among other challenges, the firefighters argued that Albuquerque's practice of using the number of hours actually worked as the divisor for the add-on payments was improper. In rejecting the firefighters' contention, the Tenth Circuit first observed that the add-on payments were not provided for in the collective bargaining agreement as "an hourly rate increase" but rather were "lump sum payments . . . not dependent on hours worked." *Id.* at 1312. The court thereafter looked to 29 C.F.R. § 778.109 and seemingly analogized the add-on payments at issue to the production bonuses discussed in § 778.110(b), which the DOL views, according to the court, as "general compensation rather than additional hourly compensation." 630 F.3d at 1312. On that basis, the Tenth Circuit concluded that the proper divisor was the number of hours actually worked and not the regular workweek as defined under the collective-bargaining agreement. *Id.* at 1312-13.

*Chavez* is neither binding nor persuasive. *Chavez* never acknowledged the guidance in § 778.113 with respect to salaried workers. This omission may be related to the court's conclusion that the add-on payments were similar to the lump-sum production bonuses discussed in § 778.110. The add-on payments at issue here are not tied to any sort of output, like a production bonus is. Rather, the add-on payments are either shift differentials (in the case of Holiday In-Lieu pay) or compensation for having certain skills that make the firefighter more valuable as a firefighter (*e.g.*, paramedic certification). So viewed, the add-ons are salary enhancements.

The City offers no reason why the mere fact the add-on payments are paid in lump sums alongside the biweekly salary, instead of being integrated into plaintiffs' pay as an increase in hourly compensation, alone should suffice to change the payments' nature as a salary enhancements. To so conclude would exalt form over substance. Nor does the City offer a persuasive reason why the fact the City and the union bargained for contractual overtime at a lower rate, by pegging the base hourly rate solely to the biweekly salary schedule and not also the add-on payments, should affect the add-on payments' nature as salary enhancements. It seems perfectly sensible for the City to negotiate a lower contractual overtime rate if the firefighters wanted contractual overtime to be paid more frequently than FLSA overtime. It also bears

United States District Court
Northern District of California

1  mention that the FLSA "was not intended to [diminish] the ability of labor and management to be

2  creative in resolving labor disputes in a manner which is mutually beneficial." *Wheeler v.*

3  *Hampton Township*, 399 F.3d 238, 242 (3d Cir. 2005) (quotation omitted).

4      The City's other theories are equally unavailing. It says that "[t]here is no reason for this

5  Court to deviate," City's Tr. Br. re Legal Issues at 5, from the Ninth Circuit's conclusion in

6  *Wallace* that the proper divisor is "the total number of hours actually worked." 799 Fed. App'x at

7  480 (quoting 29 C.F.R. § 778.109). The suggestion is not well taken. *Wallace* expressly declined

8  to decide the parties' disagreement "over the total remuneration and total hours that should be

9  used." *Id.* Moreover, the regulation *Wallace* cited is a generate statement of the rule for

10  calculating the FLSA regular rate that explains "[t]he following sections give some examples of

11  the proper method for determining the regular rate of pay in particular instances." 29 C.F.R.

12  § 778.109. One of those following sections is § 778.113, which, as discussed, concerns salaried

13  employees.

14      The City also says its preferred result is required by *Overnight Motor Transportation Co.*

15  *v. Missel*, 316 U.S. 572 (1942), *superseded by statute on other grounds as recognized in Trans*

16  *World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985). *See* City's Tr. Br. re Legal Issues at 6; Dkt.

17  No. 115 (City's Supp. Tr. Br.) at 6-7. That case is again of no help to the City. It addressed what

18  the regulations now dub the "fluctuating workweek" method of calculating FLSA overtime. *See*

19  29 C.F.R. § 778.114; *O'Brien*, 350 F.3d at 287 n.15 ("[Section] 778.114 represents the Secretary

20  of Labor's implementation of the Supreme Court's holding in [*Missel*].") In addition, the City

21  simply parroted *Missel*'s holding without saying how or why it might apply to the firefighters

22  here.[4] *See* 29 C.F.R. § 778.114(a) (providing that overtime compensation may be calculated on

23  that method if certain circumstances obtain). "The Court does not review a party's motion papers

24  and offer coaching pointers for a second round of briefs. The burden is on the party to make its

25  case in the first instance, as it sees fit." *Nat'l Fam. Farm Coalition v. Vilsack*, --- F. Supp. 3d ---,

26

27  ---

[4] Additionally, the City cited no controlling authority as to who bears the burden of establishing whether the fluctuating-workweek method does or does not apply. *See O'Brien*, 350 F.3d at 288

28  n.17; *Hills*, 866 F.3d at 615 n.22. The Court will not resolve this in favor of the City when it did not even acknowledge the issue.

1   2024 WL 4951257, at *15 (N.D. Cal. Dec. 2, 2024) (quoting *In re Google Play Store Antitrust*

2   *Litig.*, 556 F. Supp. 3d 1106, 1108 (N.D. Cal. 2021)).

3       It bears mention that the City and the firefighters' union saw it fit to maintain a lockstep

4   classification-based payment schedule while also ensuring that higher skilled firefighters are

5   adequately compensated for those skills brought to bear in the course of their work.  The Court

6   will not disturb the "actual fact" that the add-on payments are salary enhancements.  *Bay Ridge*

7   *Operating Co.*, 334 U.S. at 461.  Consequently, plaintiffs are right that the proper divisor for

8   calculating the FLSA regular rate is a fixed number of either 112, if the numerator is the add-on

9   payment total for one MOA pay period, or 224, if the numerator is the add-on payment total for 2

10  MOA pay periods.

11      Even so, the City says it paid plaintiffs more than the FLSA required, and so nothing more

12  is due to them.  At trial, evidence was introduced purporting to show that, even if plaintiffs'

13  preferred fixed divisor was used, plaintiffs were compensated more than was due under the FLSA.

14  *See* Trial Tr. at 72:8-73:2; Trial Exh. 860.  These figures are of little value for two reasons.  The

15  FLSA is concerned with ensuring laborers are paid the "minimum overtime compensation" for

16  each hour of overtime worked.  *Siegmund*, 461 Fed. App'x at 641 (quotation omitted).  Total

17  amounts paid for a given 28-day work period are of little value in assessing whether plaintiffs

18  received that which the FLSA mandates they receive for each individual hour of overtime labor.

19  *See Ballaris*, 370 F.3d at 914.  In addition, and as will be explained, the amount paid under the

20  MOA to which the City is looking is not the right figure of comparison for determining FLSA

21  compliance because that amount is artificially inflated with compensation that cannot be credited

22  against the City's FLSA overtime obligations.  *See* Trial Tr. at 73:25-74:9.

23  **III.    THE CITY'S "DUAL CALCULATION" METHOD AND IMPROPER**

24  **CREDITING**

25      The issue of "crediting," which only comes up because the City already pays plaintiffs a

26  premium for overtime under the MOA, albeit a more modest one, has been a source of confusion

27  in this case and in the *Wallace* litigation.  *See, e.g.*, Trial Tr. at 7:25-8:2 (The Court: "You need to

28  point to a document and say, 'Your Honor, here is the smoking gun that says the City has taken an

United States District Court
Northern District of California

15

1    improper overtime credit.'"); *Wallace*, 799 Fed. App'x at 480.  Part of the confusion is because the

2    statutory language is "creditable," 29 U.S.C. § 207(h), but there is no formula to which plaintiffs

3    can point in which there is a "credit" function being factored in.

4         In furtherance of Congress's dual goals of guaranteeing a floor for overtime compensation

5    and not tying labor and management's hands in negotiations, the FLSA accounts for the possibility

6    that employment contracts may include overtime provisions tailored to the employment

7    relationship.  To this end, the FLSA's establishment of a minimum of overtime pay due to

8    employees is independent of any additional compensation for which the parties bargained *except*

9    where the compensation is "[e]xtra compensation paid as described in paragraphs (5), (6), and (7)

10   of subsection (e)," which "shall be creditable toward overtime compensation payable pursuant to

11   this section."  29 U.S.C. § 207(h)(2).  In essence, Congress did not want to force employers to pay

12   "double" overtime premiums and so permits employers to treat every dollar of contractual

13   overtime, as defined in § 207(e)(5)-(7), as a dollar of FLSA overtime due.  *See Wheeler*, 399 F.3d

14   at 245; *Howard v. City of Springfield*, 274 F.3d 1141, 1146-47 (7th Cir. 2001); *Alexander v.*

15   *United States*, 32 F.3d 1571, 1575 n.4 (Fed. Cir. 1994).

16        To recap, contractual overtime in this case is paid at a rate less than the FLSA's overtime

17   premium rate.  The City attempts to ensure its compliance with the FLSA by running two different

18   calculations: one to determine how much a firefighter is owed under the MOA and a second to

19   determine how much said firefighter is due under the FLSA.  The City then pays the higher

20   amount.  Trial Exh. 104 at Interrogatory Response No. 1.  There is no dispute that, if the

21   firefighter does not work more than 212 hours in the 28-day work period, there is no problem, for

22   there simply is no statutory overtime obligation.  There also is no dispute that, if the firefighter

23   works all 56 scheduled hours per week (224 hours across the work period) and no more, the City

24   pays the firefighter 12 hours' worth of the FLSA overtime premium, and there is no problem

25   there, either.  Trial Tr. at 36:16-37:5.  That is because no contractual MOA was due and only

26   FLSA overtime was due.  Finally, the parties agree that, if the firefighter works all 56 scheduled

27   hours per week and then a bunch of extra unscheduled hours, the City need only pay the difference

28   between the contractual overtime amount and the FLSA overtime amount.  *See id.* at 18:8-9,

1    36:16-37:5.  That is the case because all contractual overtime hours were also FLSA overtime

2    hours, and contractual overtime is paid at a lesser rate.  In these latter scenarios, the City is indeed

3    taking "credits" against its FLSA obligations.

4         The dispute concerns a firefighter who does not work 212 hours' worth of scheduled hours

5    (due to sick or vacation time) but then works enough extra unscheduled hours to push him over the

6    212-hour mark.  *See, e.g.*, Trial Tr. at 18:15-24.  In these circumstances, not all contractual

7    overtime hours are FLSA overtime hours.  Some of those hours were overtime under the MOA but

8    not overtime under the FLSA.  When this occurs, "[t]he City's position is that, in determining

9    whether it has paid at least what is required by the FLSA, it may consider all contractual overtime

10   paid at 1.5x, regardless of whether that overtime was paid for hours worked under 212 hours per

11   work period or over 212 hours per work period."  SUF No. 21.  Plaintiffs contend that considering

12   the whole 1.5x base rate paid for contractual overtime hours under the 212-hour threshold is

13   unlawful because only the .5x is extra compensation within the meaning of 29 U.S.C. § 207(h)(2)

14   and so only that .5x amount may be considered in determining if the City's FLSA overtime

15   obligations have been discharged.  *See, e.g.*, Trial Tr. at 23:22-25; Plaintiffs' Supp. Tr. Br. at 6-8.

16        The evidence with respect to plaintiff Barnett illustrates this.  For the relevant work period,

17   Barnett worked 197 FLSA overtime hours.  Trial Exh. 142 at ECF 2-3.  Applying the proper fixed

18   divisor, Barnett's FLSA regular rate of pay for that period was $61.51.[5]  So, for those 197 hours,

19   Barnett should have received $18,176.21,[6] which is comprised of both his base hourly rate and the

20   FLSA overtime premium, under the statute.  Under the MOA, Barnett received contractual

21   overtime in the form of 1.5x his base hourly rate for those 197 hours: $16,516.48,[7] which includes

22   both his base hourly rate and the contractual overtime premium.  But Barnett worked 217 extra

23   unscheduled hours during the work period, meaning he was paid contractual overtime for 20 extra

24   unscheduled hours below the FLSA's 212-hour threshold.  If the City were right that it may

25   consider the entirety of the amount paid to Barnett for those 20 hours in checking its compliance

26

27   [5] (6,259.20 / 112) + (629.21 / 112) = $61.51.
     [6] That total is derived from multiplying his FLSA regular rate by 1.5, and then multiplying that by
28   197.
     [7] 197 x (55.89 x 1.5) = $16,516.48.

United States District Court
Northern District of California

with the statute, then the amount paid under the MOA to which the City may properly look to see if it discharged its statutory obligations is $18,193.28.[8]  There would be no FLSA violation if this were the case, because Barnett was paid more for those hours of statutory overtime than the statute requires.  But if plaintiffs are right, and only the .5x that constitutes the premium for contractual overtime should be counted, then the amount per the MOA that is proper to consider is $17,075.38.[9]  There would be a difference of $1,100.83 in overtime pay due under the FLSA that Barnett was not paid in the work period.[10]

With the issues so illuminated by the record, the dispositive question is to what does "[e]xtra compensation," as used in § 207(h)(2), refer in such circumstances.  This is a question of statutory interpretation on which neither party has offered controlling authority.  Plaintiffs contend that the contractual overtime provided by the MOA is the sort of extra compensation contemplated by § 207(e)(7), which is cross-referenced by § 207(h)(2), and so that subsection provides the relevant statutory text.  *See* Plaintiffs' Supp. Tr. Br. at 6-7.  The City offers no meaningful response, and in any case, it is not clear it matters here which of the three subsections referenced in § 207(h)(2) controls.

Section 207(e)(7) describes:

> [E]xtra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a)[)], where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek[.]

Plaintiffs make much of the language "extra compensation provided by a *premium* rate."  29 U.S.C. § 207(e)(7) (emphasis added).  They say that by the MOA's own terms the premium for contractual overtime is the .5x of the base hourly rate, for the remaining monies paid pursuant to

---

[8] 217 x (55.89 x 1.5) = $18,193.28.

[9] (197 x (55.89 x 1.5)) + (20 x (55.89 x .5)) = $17,075.38.

[10] The figure offered by plaintiffs is $1,101.81.  Trial Exh. 142 at ECF 1.  The less than one dollar difference between plaintiffs' calculation and the Court's is of no moment.  The underlying arithmetic often leads to amounts with more decimal places than the hundredths place, so the incongruence is in all likelihood attributable to differences in rounding along the way.

United States District Court
Northern District of California

1    contractual overtime is simply that which plaintiffs are owed as a normal matter for their labor

2    under the contract.  *See* Dkt. No. 90 (Plaintiffs' Tr. Br.) at 4-6.

3          The plain language of the statute is not so clear cut.  Excluding the long subordinate clause

4    beginning with "in pursuance," the text reads: "[E]xtra compensation provided by a premium rate

5    paid to the employe . . . where such premium rate is not less than one and one-half times the rate

6    established . . . for like work performed during such workday."  29 U.S.C. § 207(e)(7).  The

7    "where such premium rate" prepositional phrase suggests the proper focus is on "premium rate" as

8    a phrase.  Viewed thusly, the statute is read to say the "extra compensation" is the entirety of the

9    compensation which results from a "premium rate," which must be at least 1.5x the normal rate.

10   *Id.*  This reading arguably weighs in favor of the City's position.

11         But in the final analysis, plaintiffs have the better reading.  DOL has promulgated

12   extensive guidance on § 207(e)(5)-(7).  *See generally* 29 C.F.R. §§ 778.200-207.  Different

13   sections provide guidance on the relevant subparts of § 207(e), and all are consistent in their

14   conclusions that only the additional amount above and beyond the base rate is creditable.  DOL

15   gives the following example to illustrate the effect of (e)(7): "[I]f an employee is paid $5 per hour

16   under such an agreement for handling general cargo during the basic, normal, or regular workday

17   and $7.50 per hour for like work outside of such workday, the extra $2.50 will be excluded from

18   the regular rate and may be credited to overtime pay due under the Act. . . . Similar principles are

19   applicable where agreements following this general pattern exist in other industries."  29 C.F.R.

20   § 778.206; *see also id.* §§ 778.202(c), 778.205.  Although agency interpretations of statutes do not

21   bind the Court, DOL's guidance on this point evinces "thoroughness . . . in its consideration" and

22   is "consisten[t] with earlier and later pronouncements," both of which are "factors which give [the

23   guidance] power to persuade."  *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 388 (2024)

24   (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

25         The agency is not alone in this understanding.  In *O'Brien v. Town of Agawam*, the First

26   Circuit addressed the crediting issue in connection with a collective bargaining agreement that

27   paid officers a set amount for regular scheduled hours but also "extra pay for every hour worked

28   beyond eight hours in a day, and for every hour worked on otherwise off-duty time, regardless

United States District Court
Northern District of California

19

whether [the officer's] total number of hours worked for the week exceeds forty." 350 F.3d at 289. Citing to the same DOL regulations, the First Circuit stated that "only the *premium portion* of the contractual overtime rate (that is, the amount in excess of the employee's regular rate) is deemed 'overtime' pay and may be offset against any statutory overtime liability in the same week." *Id.* (emphasis in original); *see also Singer v. City of Waco*, 324 F.3d 813, 827 (5th Cir. 2003) (explaining that the "overtime premiums are extra payments made by employers. These sums are excluded from the total salary (from which the regular hourly rate is calculated) so that they do not improperly inflate the [FLSA regular rate]"); *Caraballo v. City of Chicago*, 969 F. Supp. 2d 1008, 1024 (N.D. Ill. 2013) ("[T]he City was entitled to a credit for the *half-time portion* of that pay because the half-time portion represents the 'extra' compensation." (emphasis added)).

There is also good sense in not allowing the City to credit the whole amount of the contractual overtime paid for hours under the FLSA-threshold. Under the FLSA, any hours worked below the statutory threshold are not "overtime" for any statutorily relevant purpose, notwithstanding contrary labels provided by employment contracts. *See* 29 C.F.R. § 778.101; *O'Brien*, 350 F.3d at 289 ("[A]ll hours worked under the statutory maximum are non-overtime labor."). To permit the City to consider the whole amount paid for those contractual overtime hours (an amount which includes both the base hourly rate and the contractually agreed-upon "overtime" premium) in determining if it has paid the FLSA overtime premium would allow the City to double count compensation paid for a single hour of labor. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003) ("It is axiomatic, under the FLSA, that employers must pay employees for all 'hours worked.'" (quotation omitted)), *aff'd on other grounds by* 546 U.S. 21 (2005); *see also Smiley*, 839 F.3d at 334 ("To allow compensation included in the regular rate to offset premium-rate pay, however, would facilitate a 'pyramiding' in the opposite direction by allowing employers to pay straight time and overtime together. This approach fundamentally conflicts with the FLSA's concern that employees be compensated for all hours worked."); *Ballaris*, 370 F.3d at 914 ("[I]t would undermine the purpose of the FLSA if an employer could use agreed-upon compensation for non-work time (or work time) as a credit so as to avoid paying compensation required by the FLSA.").

20

United States District Court
Northern District of California

To be clear, this interpretation does not hinge on giving the phrase "extra compensation" two different meanings depending on whether the hour of labor performed occurs above or below the 212-hour threshold. The FLSA mandates a particular *premium* to be paid on top of the normal hourly rate to which the parties have agreed. When the City considers the whole amount of contractual overtime it pays plaintiffs for hours worked above the 212-hour mark, it is in effect just matching up the portion of the contractual overtime that corresponds to the normal hourly rate, which must be paid in any case, and then "crediting" the contractual overtime premium against the FLSA mandated premium. Consequently, whether below or above the 212-hour mark, "extra compensation" still refers to the premium slice atop the normal hourly rate.

Here, the firefighters bargained for additional pay, comprised of an hourly rate tied to their biweekly salaries with a contractual overtime premium atop that, to be paid whenever they worked extra unscheduled hours outside their regular schedules, even when those hours were not overtime within the meaning of the FLSA. The City may not undercut this bargain by crediting both the contractually agreed-upon premium and the base hourly compensation for each of those individual hours of non-statutory overtime labor against the premium the FLSA requires be paid for hours of statutory overtime labor. The City certainly did not identify a statute that might permit that. *See Wheeler*, 399 F.3d at 245 ("Where a credit is allowed, the statute says so.").

## IV.    THE REMEDY

The closing question is the remedy for Barnett and the approximately 200 plaintiffs who joined him in this suit. The SAC seeks a declaration relating to those rights and duties provided or created by the FLSA, without identifying the source of the declaratory remedy. *See* SAC ¶¶ 21-22. Consequently, whether available directly under the FLSA or pursuant to 28 U.S.C. § 2201, such relief may be granted here. *See, e.g.*, *Biggs v. Wilson*, 1 F.3d 1537, 1538 n.2 (9th Cir. 1993); *Klem v. Cnty. of Santa Clara*, 208 F.3d 1085, 1088 (9th Cir. 2000); *Balgowan v. State of N.J.*, 115 F.3d 214, 218 (3d Cir. 1997); *Cummings v. Cenergy Int'l Servs., LLC*, 258 F. Supp. 3d 1097, 1107 (E.D. Cal. 2017). The City does not meaningfully contest this.

Consequently, plaintiffs are entitled to a declaration that the divisor the City should have used was a set number 112 or 224, depending on how the numerator is defined, and that is the

United States District Court
Northern District of California

1    proper divisor the City should continue to use, insofar as plaintiffs' pay structure is governed by a

2    similarly constructed MOA.  Plaintiffs are also entitled to a declaration that the City may not

3    credit in any given work period, in which plaintiffs worked or will work some hours of contractual

4    overtime that fall below the FLSA's 212-hour threshold, the full amount of contractual overtime

5    paid but may only credit the .5x premium provided by the MOA on top the base hourly rate.

6           Plaintiffs ask for backpay for work periods going back several years, so there is a question

7    of the proper limitations period.  Based on the evidence adduced at trial, the statute of limitations

8    for all plaintiffs is two years.  "Pursuant to § 255(a), the two-year statute of limitations for actions

9    under the FLSA may be extended to three years if an employer's violation is deemed 'willful.'"

10   *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016) (citation omitted).  Plaintiffs bore

11   the burden of proving "that the employer either knew or showed reckless disregard for the matter

12   of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S.

13   128, 133 (1988).  Plaintiffs did not introduce any evidence at trial on this score, and their trial

14   briefs contain, solely in connection with Barnett, unsubstantiated claims by counsel.  Supp. Tr. Br.

15   at 3-5.  Willfulness has not been shown.  *Flores*, 824 F.3d at 906 ("A court will not presume that

16   conduct was willful in the absence of evidence." (cleaned up)).  It bears mention that the overtime

17   pay issues here were complex and required substantial analysis to work out, as the preceding

18   discussion amply demonstrates.  There was plenty of room for disagreement and some mistakes

19   well short of intentional bad conduct.

20          Plaintiffs also ask for liquidated damages in an amount equal to the amount of back pay

21   they are owed.  Once a violation of the FLSA is established, "an award of liquid damages is

22   mandatory" unless the employer meets its burden of affirmatively showing "that it acted in 'good

23   faith' and that it had 'reasonable grounds' to believe that its actions did not violate the Act."

24   *Flores*, 824 F.3d at 905 (citing 29 U.S.C. § 260).  The City made no attempt to introduce evidence

25   to meet this burden.  Consequently, for plaintiffs entitled to compensation for work periods during

26   which they were unlawfully underpaid, liquidated damages are awarded in an equal amount.

27          The Court declines to undertake the burden of going through the pay records of 200+

28   plaintiffs to determine the amount each firefighter should be awarded.  The parties are directed to

1     jointly determine the amounts in a manner consistent with this order.  The parties are further

2     directed to file by March 3, 2025, a joint proposed payment report, which the Court will use as the

3     basis of the judgement.  The report should include all damages figures to be awarded to each

4     plaintiff.  This deadline will not be extended without a substantial showing of good cause.

5          **IT IS SO ORDERED.**

6     Dated: January 31, 2025

7

8     _____

9     JAMES DONATO
      United States District Judge